# THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF MASSACHUSETTS

Tristin Taylor, individually and as a
representative of a class of similarly situated
persons, and on behalf of the BDO USA
Employee Stock Ownership Plan,

    Plaintiff,

    v.

BDO USA, P.C., the Board of Directors of
BDO USA, P.C., Wayne Berson, BDO ESOP
Trustees, Catherine Moy, Stephen Ferrara,
Mark Ellenbogen, Matthew Becker, William
Eisig, and Patrick Donaghue,

    Defendants.

Civil Action No. 1:25-cv-10128-RGS

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................. 2

III.  STANDARD OF REVIEW .................................................................................... 4

IV.   ARGUMENT .......................................................................................................... 4

      A.    Plaintiff Alleges Facts Sufficient to Establish Article III Standing. ....................... 4

            1.    Plaintiff suffered an injury-in-fact through his ESOP retirement account.  5

            2.    The Complaint also sufficiently pleads causation and redressability. ........ 8

      B.    Defendants' Rule 12(b)(6) Challenges Fail. .......................................................... 9

            1.    Plaintiff pleads a § 1106(a) claim against the Board and BDO (Count I). . 9

            2.    Plaintiff plausibly pleads a 1106(b) claim against the Board (Count II). . 13

            3.    The Complaint plausibly alleges fiduciary breach claims against BDO and its Board members (Count III). ................................................................ 15

                  a.    The Rule 8(a) pleading standard applies to Plaintiff's fiduciary claims. ........................................................................................... 16

                  b.    The claim survives under Rule 9(b) pleading standard. ............... 16

                  c.    Defendants improperly ignore Plaintiff's factual allegations. ...... 17

            4.    The Complaint plausibly alleges co-fiduciary claims against all Defendants (Count IV). ........................................................................... 17

                  a.    BDO and its Board members are liable as co-fiduciaries. ............ 17

                  b.    The BDO ESOP Trustees are also liable as co-fiduciaries. .......... 18

      C.    If the Court Dismisses any of Plaintiff's Claims, He Should Be Allowed to Amend. ............................................................................................................... 20

V.    CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A123 Sys., Inc. Sec. Litig.*,
   930 F. Supp. 2d 278 (D. Mass. 2013) (Stearns, J.) ................................................................20

*Allen v. GreatBanc Tr. Co.*,
   835 F.3d 670 (7th Cir. 2016) .................................................................................................9

*Beddall v. State St. Bank & Tr. Co.*,
   137 F.3d 12 (1st Cir. 1998) ..................................................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................................4

*In re Bos. Sci. Corp. ERISA Litig.*,
   506 F. Supp. 2d 73 (D. Mass. 2007) .....................................................................................16

*Bowers v. Russell*,
   717 F. Supp. 3d 165 (D. Mass. 2024) .............................................................................. *passim*

*Braden v. Wal–Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ...........................................................................................4, 19

*Brookins v. Northeastern Univ.*,
   731 F. Supp. 3d 112 (D. Mass. 2024) ...................................................................................19

*Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*,
   4 F.4th 63 (1st Cir. 2021).......................................................................................................4

*Conner v. Mid S. Ins. Agency*,
   943 F. Supp. 647 (W.D. La. 1995)........................................................................................18

*Cruz v. Melecio*,
   204 F.3d 14 (1st Cir. 2000)...................................................................................................10

*Cunningham v. Cornell Univ.*,
   145 S. Ct. 1020 (2025)..................................................................................................... *passim*

*In re Dynegy, Inc. Erisa Litig.*,
   309 F. Supp. 2d 861 (S.D. Tex. 2004) ....................................................................................9

*Erika L. v. Dudek*,
   2025 WL 842273 (D. Me. 2025) ...........................................................................................14

*Est. of Godley v. Comm'r*,
   286 F.3d 210 (4th Cir. 2002) .....................................................................................7

*Fernandez v. K-M Indus. Holding Co., Inc.*,
   585 F. Supp. 2d 1177 (N.D. Cal. 2008) .................................................................18

*Fici v. Lucent Techs. Inc.*,
   581 F. Supp. 2d 143 (D. Mass. 2008) ....................................................................16

*Fish v. Greatbanc Trust Co.*
   2016 WL 5923448 (N.D. Ill. Sept. 1, 2016). ..........................................................7

*Gamino v. KPC Healthcare Holdings, Inc.*,
   2021 WL 162643 (C.D. Cal. Jan. 15, 2021) ..........................................................13

*Garcia-Catalan v. United States*,
   734 F.3d 100 (1st Cir. 2013)...................................................................................14

*Godfrey v. Greatbanc Tr. Co.*,
   2019 WL 4735422 (N.D. Ill. Sept. 26, 2019) ........................................................12

*Hill v. State Street Corp.*,
   2011 WL 3420439 (D. Mass. August 3, 2011).......................................................16

*Howell v. Motorola, Inc.*,
   633 F.3d 552 (7th Cir. 2011) ..................................................................................15

*Hurtado v. Rainbow Disposal Co., Inc.*,
   2018 WL 3372752 (C.D. Cal. July 9, 2018)...........................................................13

*Jackson v. New England Biolabs, Inc.*,
   729 F. Supp. 3d 60 (D. Mass. 2024) (J. Stearns) ....................................................8

*Keach v. U.S. Tr. Co. N.A.*,
   313 F. Supp. 2d 818 (C.D. Ill. 2004), *aff'd sub nom. Keach v. U.S. Tr. Co.*,
   419 F.3d 626 (7th Cir. 2005) ............................................................................12, 14

*Kling v. Fidelity Management Trust Co.*,
   323 F.Supp.2d 132 (D.Mass. 2004) ..................................................................11, 15

*Lackiram v. Montminy*,
   2006 WL 3469605 (D. Mass. Nov. 30, 2006) .......................................................20

*Laidig v. GreatBanc Tr. Co.*,
   2023 WL 1319624 (N.D. Ill. Jan. 31, 2023)............................................................5

*Lauderdale v. NFP Ret., Inc.*,
   2022 WL 422831 (C.D. Cal. Feb. 8, 2022).............................................................12

*Lee v. Argent Tr. Co.*,
  2019 WL 3729721 (E.D.N.C. Aug. 7, 2019) ........................................................................5

*Leigh v. Engle*,
  727 F.2d 113 (7th Cir.1984) ...............................................................................................11

*Lloyd v. Argent Tr. Co.*,
  2022 WL 17542071 (S.D.N.Y. Dec. 6, 2022) ..........................................................5, 6, 7, 13

*Moitoso v. FMR LLC*,
  451 F. Supp. 3d 189 (D. Mass. 2020) ..............................................................................1, 15

*Morales-Tañon v. Puerto Rico Elec. Power Auth.*,
  524 F.3d 15 (1st Cir. 2008) ...................................................................................................4

*Ocasio-Hernandez v. Fortuno-Burset*,
  640 F.3d 1 (1st Cir. 2011) .....................................................................................................4

*Pereira v. DeJoy*,
  2024 WL 1676850 (D. Mass. Apr. 18, 2024) (J. Stearns) ......................................................5

*Perez v. First Bankers Tr. Servs., Inc.*,
  2014 WL 521370 (S.D.N.Y. Jan. 13, 2014) ........................................................................ 12

*Placht ex rel. Symbria Inc. Emp. Stock Ownership Plan v. Argent Tr. Co.*,
  2022 WL 3226809 (N.D.Ill., 2022) ....................................................................................13

*Plutzer v. Bankers Tr. Co. of S.D.*,
  2022 WL 596356 (S.D.N.Y. Feb. 28, 2022).......................................................................5, 7

*In re Polaroid ERISA Litig.*,
  362 F. Supp. 2d 461 (S.D.N.Y. 2005)..............................................................................11, 15

*Ramirez v. AMPAM Parks Mech., Inc.*,
  2025 WL 621547 (C.D. Cal. Feb. 14, 2025)............................................................5, 6, 9, 13

*Rodi v. S. New England Sch. of L.*,
  389 F.3d 5 (1st Cir. 2004)....................................................................................................16

*Sec. of Lab. v. Doyle*,
  500 F.Supp.3d 309 (D.N.J. 2020) .......................................................................................17

*Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*,
  628 F.3d 25 (1st Cir. 2010)....................................................................................................4

*Shea v. Unum Life Ins. Co. of Am.*,
  2024 WL 4593525 (D. Mass. Oct. 28, 2024).......................................................................10

*Silverman v. Mut. Ben. Life Ins. Co.*,
  138 F.3d 98 (2d Cir. 1998)................................................................................18

*Stein v. Smith*,
  270 F.Supp.2d 157 (D. Mass 2003) ................................................................16

*In re Textron, Inc. ERISA Litig.*,
  2011 WL 3917922 (D.R.I. 2011)....................................................................15

*Thole v. U. S. Bank N.A.*,
  590 U.S. 538 (2020)..........................................................................................5

*Torres-Negron v. J&N Recs., LLC*,
  504 F.3d 151 (1st Cir. 2007)..............................................................................4

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)..........................................................................................5

*Valentin v. Hosp. Bella Vista*,
  254 F.3d 358 (1st Cir. 2001)..............................................................................4

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996)........................................................................................11

*Webb v. Injured Workers Pharmacy, LLC*,
  72 F.4th 365 (1st Cir. 2023)........................................................................6, 8, 9

*In re WorldCom, Inc.*,
  263 F. Supp. 2d 745 (S.D.N.Y. 2003)........................................................11, 15

*Zavala v. Kruse-Western., Inc.*,
  398 F. Supp. 3d 731 (E.D. Cal. 2019) .............................................................14

*Zond, Inc. v. Fujitsu Semiconductor Ltd.*,
  990 F.Supp.2d 50 (D. Mass. 2014) ..................................................................19

**Statutes**

29 U.S.C. § 1104................................................................................*passim*

29 U.S.C. § 1104(a)(1)...........................................................................10

29 U.S.C. § 1105(a) ...............................................................................18

29 U.S.C. § 1105(a)(1).............................................................................17

29 U.S.C. § 1105(a)(2).............................................................................17

29 U.S.C. § 1105(a)(3).......................................................................15, 18

29 U.S.C. § 1106 ..............................................................................................9, 10, 18

29 U.S.C. § 1106(a) .................................................................................... *passim*

29 U.S.C. § 1106(a)(1) ........................................................................................13

29 U.S.C. § 1106(a)(1)(A) ..................................................................................10

29 U.S.C. § 1106(a)(1)(B) .............................................................................10, 13

29 U.S.C. § 1106(a)(1)(D) ..................................................................................10

29 U.S.C. § 1106(b) ......................................................................................13, 14

29 U.S.C. § 1106(b)(3) .................................................................................13, 14

29 U.S.C. § 1108 ...................................................................................2, 9, 12, 19

29 U.S.C. § 1108(e) ..............................................................................................2

29 U.S.C. Ch. 18, Subch. I, Subt. B, Pt. 4 ........................................................ 18

**Other Authorities**

Bogert & Bogert, Law of Trusts and Trustees § 543 ....................................11

Fed. R. Civ. P 8(a) ....................................................................................15, 16, 19

Fed. R. Civ. P 9(b) ....................................................................................15, 16, 17

Fed. R. Civ. P 12 ..................................................................................................15

Fed. R. Civ. P 12(b)(1) .........................................................................................4, 5

Fed. R. Civ. P 12(b)(6) ...............................................................................4, 5, 9, 10

Fed. R. Civ. P 15(a) ..............................................................................................20

# I.    INTRODUCTION

In 2023, the Board of Directors and senior executives of BDO USA, P.C. concocted a self-serving plan to offload almost half of their BDO stock at an inflated price of $1.3 billion. Knowing that no sophisticated arms-length buyer would agree to that price, Defendants manufactured a compliant purchaser: an employee stock ownership plan ("ESOP"). An ESOP is a trust designed to benefit the company's employees, not its executives. And as fiduciaries of the ESOP, Defendants were bound by the high standards imposed by the Employee Retirement Income Security Act of 1974. But rather than fulfill their ERISA fiduciary duties —among the "highest known to the law," *Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 204 (D. Mass. 2020)—Defendants instead manipulated the process to enrich themselves at the expense of BDO's employees.

BDO and its Board installed State Street as an "independent" trustee to evaluate the fairness of the ESOP transaction (the "Transaction"). In practice, however, they retained unilateral power to fire State Street, stripping its real independence. Worse, they indemnified State Street from ERISA liability, undermining its incentive to scrutinize the fairness of the $1.3 billion price tag. Because BDO is a private company, State Street relied on Defendants to provide complete and accurate financial data about BDO's past and future operations to properly value BDO stock. Instead, Defendants provided State Street with incomplete and inaccurate information—including inflated revenues that misclassified client credits—to support the inflated valuation. Defendants' provision of incomplete and inaccurate information violated Defendants' fiduciary duties of loyalty, candor, and prudence. As a result, the ESOP grossly overpaid for the stock and Defendants reaped the windfall.

In their motion to dismiss, Defendants spill considerable ink in challenging Plaintiff's prohibited transaction claims on grounds that were explicitly foreclosed by the Supreme Court just days before Defendants filed their motion. Defs.' Mem., ECF 30 ("MTD") at 11-16. Defendants

contend that the Complaint must negate the prohibited-transaction exemption in 29 U.S.C. § 1108(e). But the Supreme Court held that "a plaintiff need only plausibly allege the elements contained in [the prohibited transaction] provision itself, without addressing potential § 1108 exemptions." *Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1022 (2025).

Defendants also half-heartedly suggest that Plaintiff has not alleged Article III injury-in-fact. That argument simply ignores myriad facts in the Complaint, which—when taken as true—easily support the inference that the ESOP overpaid for BDO stock. That overpayment directly injured Plaintiff by reducing the value of his ESOP account. Numerous federal courts adjudicating ESOP cases have found allegations similar to those here sufficient to establish Article III standing and to state plausible ERISA claims under 29 U.S.C. §§ 1104 and 1106.

The remainder of Defendants' brief consists of makeweight arguments that offer no serious challenge to Plaintiff's well-pleaded claims.

## II.    FACTUAL BACKGROUND

BDO is a professional corporation that provides accounting, auditing, tax, and advisory services in the United States. Compl. ¶ 18. Before the 2023 ESOP Transaction, BDO was owned by the Company's Board members, executives, and principals, including the individuals named in this lawsuit (CEO Wayne Berson and other individuals who were Board members and/or ESOP Trustees). *Id.* ¶¶ 3, 27, 52. Rather than sell to an arms-length buyer who would perform robust due diligence and demand governance rights, Defendants created the ESOP (a retirement plan intended to solely benefit employees) to purchase 42% of BDO stock for $1.3 billion. *Id.* ¶¶ 5-9, 68-78.

To facilitate the ESOP's purchase of BDO stock, BDO and its Board appointed State Street—who they believed would acquiesce to their will—to approve the ESOP's purchase price. *Id.* ¶¶ 6, 23, 114-115. They retained unilateral authority to remove State Street and indeed did so, replacing it with company insiders shortly after the Transaction closed. *Id.* ¶¶ 114, 103. BDO also

agreed to indemnify State Street for the Transaction, eliminating State Street's ERISA liability for allowing the ESOP to pay an inflated price. *Id*. ¶¶ 20, 42.

At the time of the sale, BDO's audit business was in decline. Investigations by the Public Company Accounting Oversight Board ("PCAOB") show that BDO had the poorest audit performance of any accounting firms monitored by the PCAOB. *Id*. ¶¶ 61-67. The PCAOB reports revealed that between 2021 and 2023, the vast majority of BDO's audits suffered from "significant deficiencies," resulting in multi-million-dollar fines. *Id*. ¶¶ 4, 63-66, 119(b). However, the purchase price did not adequately reflect "the reputational harm and direct financial harm caused by BDO's worsening [audit] performance." *Id*. ¶ 67.

BDO and its Board had a fiduciary duty to provide accurate and complete information to State Street to support a fair valuation of BDO stock. Instead they provided State Street with inflated figures. *Id*. ¶¶ 10, 50, 51. During the months leading up to the ESOP Transaction, BDO pressured its partners to inflate revenues by misattributing client "credits" as revenue, despite the fact that "credits" do not reflect payment for services rendered. *Id*. ¶¶ 53-60. State Street used these inflated revenue figures to value BDO. *Id*. ¶ 55. Had BDO and its Board provided State Street complete and accurate information about BDO's operations, the ESOP would not have paid $1.3 billion for 42% of BDO stock, which was well above fair market value. *Id*. ¶ 60. The Board members amended BDO's bylaws to entrench their own control, curtailing shareholders' rights to elect board members and receive dividends. *Id*. ¶¶ 31-36. Finally, the ESOP Transaction saddled the ESOP with an extraordinary amount of debt at an unreasonably high interest rate of 11.36%. *Id*. ¶¶ 12, 45-48, 102. As a result, the ESOP and its participants were left with an enormous debt burden and excessive interest payments, all of which enriched Defendants.

### III.    STANDARD OF REVIEW

A party moving to dismiss under Rule 12(b)(1) may raise either a facial or factual challenge to the court's subject matter jurisdiction. *See Torres-Negron v. J&N Recs., LLC*, 504 F.3d 151, 162 (1st Cir. 2007). Here, Defendants assert a facial challenge: they do not dispute the veracity of Plaintiff's factual allegations, but instead contend that his allegations fail to plausibly allege an injury-in-fact. MTD at 19-20; *see Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021). When a facial challenge is asserted, the Court accepts the factual allegations as true and considers whether "the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Torres-Negron*, 504 F.3d at 162 (internal quotation marks and citations omitted); *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

A "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but must contain facts sufficient to "raise a right to relief above the speculative level." *Morales-Tañon v. Puerto Rico Elec. Power Auth.*, 524 F.3d 15, 18 (1st Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010) (citation omitted). The "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 14 (1st Cir. 2011) (quoting *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)).

### IV.    ARGUMENT

**A.    Plaintiff Alleges Facts Sufficient to Establish Article III Standing.**

Defendants challenge the Court's jurisdiction under Rule 12(b)(1) by asserting that Plaintiff "fails to establish any injury-in-fact on any of his claims and therefore lacks standing."

MTD at 3, 19. Although they raise this argument at the end of their brief, the Court must address it first. When the court is presented "with deciding motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it must resolve the jurisdictional dispute before reaching the merits[.]" *Pereira v. DeJoy*, 2024 WL 1676850, at *1 (D. Mass. Apr. 18, 2024) (J. Stearns).

### 1.     Plaintiff suffered an injury-in-fact through his ESOP retirement account.

Plaintiff's injury here is a financial one, precisely the sort of "financial stake in the litigation" that satisfies Article III. *See Thole v. U. S. Bank N.A.*, 590 U.S. 538, 543 (2020) (citation omitted); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (economic harms "readily qualify as concrete injuries under Article III" and are among the "most obvious" harms recognized as conferring standing). Plaintiff alleges that the ESOP (and, by extension, his individual ESOP account) overpaid for BDO stock and incurred an unreasonably high interest rate of 11.36% on the debt used to finance the Transaction. Compl. ¶¶ 3-12, 45-48, 53-78, 102. These allegations suffice to establish injury. *Lloyd v. Argent Tr. Co.*, 2022 WL 17542071, at *2 (S.D.N.Y. Dec. 6, 2022); *Laidig v. GreatBanc Tr. Co.*, 2023 WL 1319624, at *5 (N.D. Ill. Jan. 31, 2023); *Ramirez v. AMPAM Parks Mech., Inc.*, 2025 WL 621547, at *4 (C.D. Cal. Feb. 14, 2025).

Defendants' injury challenge ignores Plaintiff's detailed allegations establishing that the ESOP overpaid. *Compare* MTD at 19-20 ("[Plaintiff] simply claims the ESOP was harmed, and leaves it at that.") *with* Compl. ¶¶ 3-13, 45-78, 102, 119. Worse, Defendants' only authority for their standing challenge are two out-of-circuit district court decisions that "are easily distinguished" from this case because there "the only damage alleged was the decline in the stock's value immediately after the plan took on debt to purchase it." *Lloyd*, 2022 WL 17542071, at *2 (distinguishing *Plutzer v. Bankers Tr. Co. of S.D.*, 2022 WL 596356 (S.D.N.Y. Feb. 28, 2022) and *Lee v. Argent Tr. Co.*, 2019 WL 3729721, at *3 (E.D.N.C. Aug. 7, 2019)); *Laidig* 2023 WL 1319624, at *5 (same); *Ramirez*, 2025 WL 621547, at *4 (similar). Here, by contrast, the

Complaint does not rely on the post-Transaction decline in value of BDO stock. Instead, Plaintiff

details the *pre*-Transaction misconduct that caused Plaintiff and the ESOP to suffer injury-in-fact:

1. **Inflated revenue figures**: Defendants pressured BDO partners to mischaracterize client "credits" (i.e., retainers or prepayments) as revenue and submitted these inflated figures to State Street, who used them to value BDO stock. Compl. ¶¶ 53–59. Had State Street received complete and accurate information about BDO's operations and performance, the ESOP would not have paid an inflated price for BDO stock. *Id.* ¶ 60.

2. **Omission of audit performance issues**: Defendants failed to fully disclose that BDO's audits were repeatedly found deficient by PCAOB inspections, resulting in significant multi-million fines and reputational harm. *Id*. ¶¶ 61–67, 119(b).

3. **Lack of control**: The $1.3 billion price that the ESOP paid did not include sufficient discounts for the fact that the ESOP obtained no control over BDO or its governance, nor that the stock the ESOP purchased had limited dividend rights relative to the rights of the preferred stockholders. *Id*. ¶¶ 68–78.

4. **Unreasonable financing terms**: To finance the Transaction, the ESOP was forced to enter into a credit arrangement that included an indirect loan from Apollo at an unreasonably high interest rate of 11.36%. *Id*. ¶¶ 12, 45, 102. The resulting debt burden—totaling $1.3 billion—and the substantial interest payments required to service that debt were unreasonable. *Id*. ¶¶ 46, 48. The financing terms were not in the ESOP's best interest because they severely compromised BDO's future cash flows. *Id*.

These facts are more than sufficient to establish injury, especially "at the motion to dismiss stage"

where the court must "read the complaint as a whole" and "indulge all reasonable inferences in the

plaintiff's favor." *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 373–74 (1st Cir. 2023)

(citation omitted); *see also Lloyd*, 2022 WL 17542071, at \*2; *Ramirez*, 2025 WL 621547, at \*4.

In a bid to erase Plaintiff's injury, Defendants ask the Court to simply disregard Plaintiff's

allegation that BDO pressured its partners to inflate revenues because these facts are "not proven

facts." MTD at 15. But at the pleading stage, Plaintiff is not required to prove his claims; rather,

the Court must take the allegations as true and draw all reasonable inferences in Plaintiff's favor.

*Webb*, 72 F.4th at 373–74. Defendants also mischaracterize Plaintiff's references to BDO's post-

Transaction revenue slowdowns, asserting that post-Transaction facts cannot support an inference

of overpayment. MTD at 13-14. But Plaintiff does not rely on these facts in isolation; instead, he

explains that the drop in revenue following the transaction—contrasted with unusually high pre-Transaction revenues—supports the inference that BDO inflated its revenue numbers leading up to the sale.[1] Compl. ¶¶ 53-60. In other words, the post-Transaction revenues are consistent with pre-Transaction inflation and further supports the allegation of overpayment. Unlike *Plutzer and Lee*, the Complaint here contains no allegation that "post-transaction equity valuations . . . published in the Plan's Annual Returns (known as Form 5500s), support an inference that the Plan overpaid for the company." *Plutzer*, 2022 WL 17086483, at *2.

Defendants' claim that "control rights are not expected upon the purchase of a minority interest," MTD at 14, also raises a fact-based issue that is inappropriate for resolution on a motion to dismiss. Indeed, the Fourth Circuit case cited by Defendants confirms that, whether a control discount should apply to a minority interest, is a factual question typically requiring expert testimony. *Est. of Godley v. Comm'r*, 286 F.3d 210, 212 (4th Cir. 2002) ("Whether a minority discount is appropriate in a given situation is part of the larger factual question of valuation.").

Ultimately, Defendants' arguments are premature merits-based challenges that must be rejected at the pleading stage. Federal courts routinely reject similar arguments to those Defendants press here because they go "to the merits of the plaintiffs' claims, which must be assumed for the purposes of standing." *Lloyd*, 2022 WL 17542071, at *2; *see also Bowers v. Russell*, 717 F. Supp. 3d 165, 176 (D. Mass. 2024).

---

[1] Defendants rely on *Fish v. Greatbanc Trust Co.* because the court "dismiss[ed] prohibited transaction claims," (MTD at 14) but fail to mention that *Fish* was decided after a 34-day trial. 2016 WL 5923448, at *66 (N.D. Ill. Sept. 1, 2016). In the passage cited by Defendants, the court resolved disputes between experts, in part, by weighing credibility and found a "future repurchase obligation has no impact on per-share value"—an issue not relevant to Plaintiff's Complaint here.

**2.      The Complaint also sufficiently pleads causation and redressability.**

Defendants do not contest Plaintiff's standing on the grounds of causation or redressability. Nonetheless, Plaintiff addresses these elements of Article III standing as "the court has an independent obligation to ensure it has subject matter jurisdiction to entertain a dispute." *Jackson v. New England Biolabs, Inc.*, 729 F. Supp. 3d 60, 71 n.11 (D. Mass. 2024) (J. Stearns). Here, the Complaint plausibly alleges that BDO and the Board's fiduciary failures caused the ESOP to overpay. *See e.g.*, Compl. ¶ 60 ("Had Defendants provided accurate, honest and complete information about BDO's operations, the ESOP would not have paid a purchase price in excess of fair market value."); *see also id.* ¶ 13 (alleging that, had the Board and BDO "ensured that [State Street] conducted the rigorous due diligence," the ESOP would not have paid $1.3 billion for BDO stock without gaining any control over the Company); *id.* ¶¶ 103-104.

Although State Street approved the Transaction, BDO and its Board's actions were an independent and significant cause of the alleged harm. "Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Webb*, 72 F.4th at 377 (citation omitted). Here, the ESOP Transaction would not have occurred but for the Board's appointment of State Street. Moreover, BDO and its Board could have appointed a more diligent trustee or provided State Street with complete and accurate financial information to value BDO stock, either of which would have resulted in a lower purchase price or no transaction at all. Compl. ¶¶ 13, 23, 41, 103. Also, they chose to indemnify State Street for its fiduciary actions in connection with the ESOP, eliminating State Street's primary motivation to carefully fulfill its fiduciary responsibilities. *Id.* ¶¶ 20, 22-23. Any of these failures—standing alone or considered together—support a reasonable inference that State Street would not have approved the $1.3 billion purchase price had BDO and its Board fulfilled their own fiduciary obligations. *Bowers*, 717 F.Supp.3d at 173 (claim against the Board who appointed ESOP trustee

8

met Article III's causation requirement where plaintiffs' harm was traceable to the Board's fiduciary actions and inactions).

As to redressability, Plaintiff seeks multiple forms of relief that would redress his injury, including an order requiring Defendants to restore the amount of overpayment to the ESOP. This satisfies Article III. *See Webb*, 72 F.4th at 377 ("monetary relief would compensate plaintiffs for their injuries, rendering them redressable") (cleaned up); *see also Ramirez*, 2025 WL 621547, at *4 (redressability satisfied where a favorable decision would remedy the ESOP's overpayment).

**B.     Defendants' Rule 12(b)(6) Challenges Fail.**

**1.     Plaintiff pleads a § 1106(a) claim against the BDO and its Board (Count I).**

Defendants seek dismissal of Plaintiff's § 1106(a) claims on the grounds that "Plaintiff Fails to Plausibly Allege that the ESOP Paid More than Fair Market Value." MTD at 13-16. But Defendants' position was squarely rejected by the Supreme Court in *Cunningham*, which held that "a plaintiff need only plausibly allege the elements contained in [the prohibited transaction] provision itself, without addressing potential § 1108 exemptions." 145 S. Ct. at 1022;[2] *see also Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 675 (7th Cir. 2016).

As *Cunningham* made clear, § 1106 creates a categorical bar on certain types of transactions, and "plaintiffs need only plausibly allege each of those elements of a prohibited-transaction claim." 145 S. Ct. at 1027. The three elements of Count I are: (1) BDO and the Board

---

[2] Defendants' discussion of *Cunningham* is relegated to a single confusing footnote, where they simply assert that *Cunningham*'s holding is not applicable to Count I because "Plaintiff's theory is that BDO and the Board failed to appropriately monitor State Street" and suggests that a failure to monitor claim requires "red flags" about the trustees' failure to do its job. MTD at 13 n.4. Defendants appear to conflate Counts I and III, reflected in their citation to *In re Dynegy, Inc. ERISA Litigation*, which addressed a fiduciary breach claim under § 1104—not a prohibited transaction claim under § 1106. *In re Dynegy, Inc. Erisa Litig.*, 309 F. Supp. 2d 861, 900-903 (S.D. Tex. 2004). *Cunningham* itself explained that § 1106 "*supplements* the fiduciary's general duty of loyalty [§ 1104] to the plan's beneficiaries … by categorically barring certain transactions deemed 'likely to injure the pension plan.'" 145 S. Ct. at 1025 (emphasis added) (citations omitted).

are fiduciaries with respect to the ESOP; (2) they caused the ESOP to engage in the challenged transaction; and (3) they knew or should have known that the ESOP Transaction was a direct or indirect purchase or loan between the ESOP and a party-in-interest. *Id.*; 29 U.S.C. 1106(a)(1)(A), (B), (D). Plaintiff has adequately alleged each of these elements.

*First*, Plaintiff alleges that BDO and its Board were fiduciaries. Compl. ¶¶ 21, 25. Defendants do not, and cannot, dispute these allegations. *See* Ex. A (ESOP Plan Document) at § 2.34 (defining ESOP "fiduciaries" as "the Corporation, the Board, the Plan Administrator, the Trustee, and any Investment Manager"), § 2.11 ("'Corporation' means BDO USA, P.C."), § 2.5 ("'Board' means the Board of Directors of the Corporation").[3]

*Second*, Plaintiff plausibly alleges that BDO and its Board caused the ESOP transaction by appointing State Street and failing to ensure that it had complete and accurate information to assess the fair market value of the BDO stock. *See supra* § IV.A.2. Defendants suggest that their actions do not give rise to a § 1106 prohibited transaction claim because Defendants were wearing their "corporate officer hats" rather than their "fiduciary hats." MTD at 18. Not so. Claims brought under § 1106(a)—unlike § 1104 fiduciary breach claims—do *not* require the fiduciary defendant to be acting in a fiduciary capacity when they cause the prohibited transaction. *Compare* 29 U.S.C. § 1104(a)(1) ("a fiduciary shall discharge his *duties with respect to a plan*…") *with* 29 U.S.C. §

---

[3] Federal Rule of Civil Procedure 12(b)(6) permits the Court "to consider not only the complaint, but also matters fairly incorporated within it and matters susceptible to judicial notice." *Cruz v. Melecio*, 204 F.3d 14, 21 (1st Cir. 2000) (citations omitted). "When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998). The Complaint's factual allegations are expressly linked to and dependent upon the Plan. *See, e.g.*, Compl. ¶¶ 17, 19, 22, 28, 80; *Shea v. Unum Life Ins. Co. of Am.*, 2024 WL 4593525, at *1 (D. Mass. Oct. 28, 2024) (granting request to take judicial notice of plan document and other agreement because "the Complaint's allegations are specifically linked to its terms"). Accordingly, the Plan is incorporated by reference. *See* Wheeler Decl., Ex. A.

1106(a) ("*a fiduciary with respect to a plan* shall not cause the plan to engage in a transaction, if…") (emphasis added).

Even assuming fiduciary capacity were required, Plaintiff has alleged precisely these facts. The Board's appointment of State Street was a fiduciary act. *Kling v. Fidelity Mgmt. Tr. Co.*, 323 F.Supp.2d 132, 142 (D. Mass. 2004). But for that appointment, the ESOP Transaction could not have occurred. Likewise, when BDO and its Board provided inaccurate information to State Street—knowing that it would be used to value the stock—they were acting in a fiduciary capacity. *See In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 477 (S.D.N.Y. 2005) ("Plaintiffs' allegation that [the appointing fiduciary] failed to adequately monitor or keep the [appointees] informed states a claim for breach of fiduciary duty."); *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 765 (S.D.N.Y. 2003); *cf. Varity Corp. v. Howe,* 516 U.S. 489, 506 (1996) (recognizing that, under trust law, a fiduciary's "duty of loyalty requires trustee to deal fairly and honestly with beneficiaries") (citing Bogert & Bogert, Law of Trusts and Trustees § 543, at 218–19). In other words, appointing fiduciaries are "obliged to take prudent and reasonable action to determine whether the administrators they appoint are fulfilling their fiduciary obligations." *Leigh v. Engle*, 727 F.2d 113, 135 (7th Cir.1984) (cleaned up) (holding that appointing fiduciaries "could not insulate themselves from all fiduciary liability by limiting their roles in the administration of the trust"). BDO and its Board not only failed to do to ensure that State Street was fulfilling its fiduciary obligations, they affirmatively took actions—such as providing misleading information—that undermined State Street's ability to fulfill its fiduciary obligations. *E.g.*, Compl. ¶¶ 53-60.

Defendants also imply that they are not liable for the prohibited transaction because State Street had "full and exclusive responsibility to negotiate and approve the ESOP Transaction on behalf of the BDO ESOP." MTD at 18. But courts routinely reject this view and deny motions to

11

dismiss where the appointing fiduciaries—like BDO and the Board here—caused or contributed to a prohibited transaction. *See Perez v. First Bankers Tr. Servs., Inc.*, 2014 WL 521370, at *6-7 (S.D.N.Y. Jan. 13, 2014) (denying motion to dismiss § 1106(a) claim based on fiduciary defendants appointment of ESOP trustee and knowledge that the ESOP was overpaying for the stock); *Lauderdale v. NFP Ret., Inc.*, 2022 WL 422831, at *21 (C.D. Cal. Feb. 8, 2022) (that another fiduciary had discretionary authority over a transaction did not absolve the appointing fiduciaries from § 1106(a) liability); *Bowers*, 717 F. Supp. 3d 165 at 175-77 (complaint plausibly alleged liability against the board based on its appointment of the trustee, its duty to monitor, and duty to take action upon discovery that the appointed fiduciaries are not performing properly).

The cases Defendants cite do not hold otherwise. MTD at 18. In fact, if anything, they support Plaintiff's position by confirming that appointment of a trustee is a fiduciary act and that § 1106(a) claims require factual development. *See, e.g.*, *Godfrey v. Greatbanc Tr. Co.*, 2019 WL 4735422, at *3-4 (N.D. Ill. Sept. 26, 2019) (allegations that defendants "negotiated and executed" the sales were not sufficient to show defendants were acting in their fiduciary capacity; but, *by contrast*, appointing the ESOP trustee plausibly pleaded a fiduciary claim); *Keach v. U.S. Tr. Co. N.A.*, 313 F. Supp. 2d 818, 870-71 (C.D. Ill. 2004) (holding—after trial—that executive committee defendants did not engage in a prohibited transaction because trustee made an independent decision that caused the ESOP to purchase shares), *aff'd sub nom. Keach v. U.S. Tr. Co.*, 419 F.3d 626 (7th Cir. 2005); *see supra* Section A.2.

*Third*, while Defendants do not challenge the knowledge element of Plaintiff's § 1106(a), they complain that "on their face, ERISA's broad prohibited transaction rules would encompass any ESOP transaction." MTD at 12. Unfortunately for Defendants, the Supreme Court foreclosed this argument in *Cunningham*. 145 S. Ct. at 1020 ("The exemptions set forth in […] § 1108, do

not impose additional pleading requirements to make out a §1106(a)(1) claim."). In any event, Plaintiffs have adequately pleaded that BDO and its Board knew the transaction was a party-in-interest transaction. *See infra* § IV.B.4.a; Compl. ¶¶ 93-104.

*Finally*, Defendants contend that the exorbitant 11.36% interest rate on the ESOP Transaction debt is irrelevant because the loan "involves Apollo and BDO, *not the BDO ESOP*." MTD at 14. However, Defendants ignore the plain text of § 1106(a), which prohibits both *indirect* and direct loans involving a plan. 29 U.S.C. § 1106(a)(1)(B). Here, BDO's loan was undertaken specifically to fund "a corresponding loan" from BDO to the ESOP, making it an indirect loan that violates § 1106(a)(1)(B). Compl. ¶¶ 45-48, 95. Similar allegations have been sustained at the pleading stage by other courts adjudicating ESOP cases like this one. *See Placht ex rel. Symbria Inc. Emp. Stock Ownership Plan v. Argent Tr. Co.*, 2022 WL 3226809, at *2 (N.D.Ill., 2022) (denying dismissal where plaintiff alleged "ongoing excessive debt burden due" to ESOP transaction); *Lloyd*, 2022 WL 17542071, at *2.

### 2.    Plaintiff plausibly pleads a § 1106(b) claim against the Board (Count II).

Defendants' sole argument for dismissal of Count II is that Plaintiff failed to allege that BDO and its Board *caused* themselves to receive "consideration for [their] own personal account" in connection with the ESOP Transaction. MTD at 12. But § 1106(b) imposes no such causation requirement. 29 U.S.C. § 1106(b); *Ramirez*, 2025 WL 621546, at *6 ("ERISA § 406(b) 'does not have a causal element; it requires only that the fiduciary received consideration from a transaction involving assets of the plan.'") (quoting *Hurtado v. Rainbow Disposal Co., Inc.*, 2018 WL 3372752, at *11 (C.D. Cal. July 9, 2018)); *Gamino v. KPC Healthcare Holdings, Inc.*, 2021 WL 162643, at *6 (C.D. Cal. Jan. 15, 2021) (§ 406(b) "does not have a causal element").

Section 1106(b) flatly prohibits a fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving

the assets of the plan." 29 U.S.C. § 1106(b)(3). The statutory text contains no language requiring the plaintiff to plead or prove that the fiduciaries *caused* their accounts to receive consideration from plan assets.

Defendants cite just two cases for their contrary view that § 1106(b)(3) contains a silent causation requirement. Neither of them is persuasive. The first, *Zavala v. Kruse-Western., Inc.*, simply asserts—without authority or analysis—that a plaintiff must plead causation to state a claim under § 1106(b)[4] and thus offers no persuasive authority. 398 F. Supp. 3d 731, 744 (E.D. Cal. 2019)); *cf. Erika L. v. Dudek*, 2025 WL 842273, at *3 n.1 (D. Me. 2025) (declining to follow in and out-of-circuit authority because "such a requirement would be against the weight of authority" of other courts), *report and recommendation adopted*, 2025 WL 1180206 (D. Me. April 23, 2025). The second case, *Keach v. U.S. Trust Co. N.A.*, is irrelevant because it involved a post-trial factual finding that the plaintiff had not proven his claim under § 1106(a)—*not* § 1106(b)—and thus does not speak to the relevant pleading issue here. 313 F.Supp. 2d 818, 866 (C.D. Ill. 2004), *aff'd sub nom. Keach v. U.S. Tr. Co.*, 419 F.3d 626 (7th Cir. 2005).

Regardless, even if Plaintiff was required to allege causation as an element of his § 1106(b) claim, he has done so.[5] *See supra* § A.2. Accordingly, Defendants' challenge to Plaintiff's 29 U.S.C. § 1106(b) claim fails.

---

[4] The *Zavala* court did not even specify which subsection of § 1106(b) it examined.

[5] To the extent that Defendants argue that Plaintiff does not properly connect his allegations to Count II, that argument fails. In pleading Count II, Plaintiff explicitly "incorporate[d] the preceding paragraphs as though set forth herein." Compl. ¶ 105. Regardless, the Court must consider all factual allegations—not just those alleged under Count II—when deciding whether Plaintiff plausibly alleges a § 1106(b) claim. *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) ("the complaint must be read as a whole[,] . . . there need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action").

**3.    The Complaint plausibly states fiduciary breach claims against BDO and its Board (Count III).**

Defendants concede, as they must, that BDO and its Board acted as fiduciaries when they appointed State Street as the ESOP trustee. MTD at 16; *see also Kling*, 323 F. Supp. 2d at 142 ("The power to appoint fiduciaries is itself a fiduciary function."). They further concede that they had a duty to monitor State Street. MTD at 16; *see also Bowers*, 717 F. Supp. 3d at 175.

Plaintiff alleges that BDO and its Board breached their fiduciary duties by "failing to provide complete and accurate information to State Street and by not appropriately monitoring State Street as the trustee during the Transaction." Compl. ¶¶ 118-119. These allegations are sufficient to state a fiduciary breach claim. *See In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 477; *In re WorldCom, Inc.*, 263 F. Supp. 2d at 765. Here BDO and its Board had a "duty to take action" because they knew that State Street was relying on inflated financial information and was therefore "not performing properly." *Bowers*, 717 F. Supp. 3d at 175 (citation omitted); Compl. ¶¶ 51, 119(c), 124; *see also Moitoso*, 451 F.Supp. 3d at 221. Further, courts recognize that a "fiduciary who violates this ongoing duty to monitor is responsible for any breaches on the part of the appointed fiduciaries." *Moitoso*, 451 F.Supp.3d at 221 (citing 29 U.S.C. §§ 1104, 1105(a)(2) and *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011)). Finally, "courts generally decline to decide whether a duty to monitor has been breached on a motion to dismiss because it is a highly fact-specific analysis." *Bowers*, 717 F. Supp. 3d at 175–176 (quoting *In re Textron, Inc. ERISA Litig.*, 2011 WL 3917922, at *9 (D.R.I. 2011)). While Defendants seek dismissal on several grounds, none of their arguments warrant Rule 12 dismissal.

a. *The Rule 8(a) pleading standard applies to Plaintiff's fiduciary claims.*

Defendants incorrectly assert that Plaintiff's fiduciary claims sound in fraud and are thus subject to Rule 9(b)'s heightened pleading standard. MTD at 17. Courts have repeatedly rejected this argument and applied Rule 8(a)'s notice pleading standard in ERISA cases where fraud is not a required element of the claim, but may be part of the factual allegations. *Hill v. State Street Corp.*, 2011 WL 3420439, at *30 (D. Mass. August 3, 2011); *see also Fici v. Lucent Techs. Inc.*, 581 F. Supp. 2d 143, 151 (D. Mass. 2008) (rejecting 9(b) pleading standard for ERISA fiduciary breach claims); *In re Bos. Sci. Corp. ERISA Litig.*, 506 F. Supp. 2d 73, 76-77 (D. Mass. 2007) (same); *Stein v. Smith*, 270 F.Supp.2d 157, 166 (D. Mass 2003) (same). As in *Hill*, "Plaintiffs might ultimately be unable to prove fraud but nonetheless have a meritorious claim" that BDO and its Board provided State Street with inaccurate and incomplete information. *Hill*, 2011 WL 3420439, at *30. The *Hill* court further reasoned that "it would be unfair to further encumber an ERISA plaintiff at the pleading stage simply because the fiduciary defendant is also the party allegedly responsible for making the investment imprudent." *Id*. This holding applies in equal force here.

b. *The claim survives under the Rule 9(b) heighted pleading standard.*

Even if Rule 9(b)'s pleading standard applies (it does not), Plaintiff has satisfied it. Defendants appear to take issue with Plaintiff's allegations regarding BDO and its Board's provision of inaccurate information regarding BDO's revenue. MTD at 17. However, the Complaint contains the "who, what, where, and when" necessary to satisfy the Rule 9(b) pleading standard. *Rodi v. S. New England Sch. of L.*, 389 F.3d 5, 14 (1st Cir. 2004). More precisely, Plaintiff alleges that BDO and its Board (the "who") provided inflated revenue information to State Street for its assessment of the fair market value of BDO stock (the "what" and "where") on July 12, 2022 and July 6, 2023 (the "when"). Compl. ¶¶ 51, 54-57, 118-119. The Complaint contains detailed allegations concerning the "what"—that BDO pressured its employees to inflate BDO

16

revenues by mischaracterizing client "credits" as revenue (*id*. ¶¶ 54-57); and that BDO and its Board should have provided accurate information to State Street, but failed to do so (*id*. ¶¶ 51, 67, 118-119). These allegations satisfy Rule 9(b)'s pleading standard even if the Court assumes (arguendo) that the heightened pleading standard applies here.

> c.     *Defendants improperly ignore Plaintiff's factual allegations.*

Defendants' attack on Plaintiff's fiduciary breach claim fails out of the gate. Strangely, they assert that "Plaintiff does not allege that Defendants failed to provide State Street with any specific information that it needed to do its job or that it provided misleading information." MTD at 17. But the Complaint pleads precisely these facts. Compl. ¶¶ 53-60 (BDO pressured its employees to inflate revenue and failed to provide State Street with accurate and complete financial data); *id*. ¶¶ 61-67 (Defendants failed to ensure that State Street received complete information about the reputational harm and operational risks resulting from BDO's repeated audit deficiencies, and the related multi-million dollar fines).

**4.     The Complaint plausibly alleges co-fiduciary claims against all Defendants (Count IV).**

> a.     *BDO and its Board members are liable as co-fiduciaries.*

A fiduciary is liable for another fiduciary's breach of fiduciary responsibilities if he knows of the breach and participates in, conceals, enables, or fails to remedy it. 29 U.S.C. § 1105(a)(1). "By enacting these provisions for co-fiduciary liability, Congress expressly rejected the defense of the inactive fiduciary." *Sec. of Lab. v. Doyle*, 500 F.Supp.3d 309, 320 (D.N.J. 2020) (cleaned up).

In Count IV, Plaintiff plausibly alleges co-fiduciary liability against all Defendants under 29 U.S.C. §§ 1105(a)(1)-(3). BDO and the Board relegate their challenge to the co-fiduciary claim against them to a footnote. MTD at 17 n.5. They contend they lacked knowledge of State Street's

breach and argue that "no underlying breach" means "there can be no co-fiduciary breach." *Id.* But the Complaint clearly alleges that BDO and its Board knew about and participated in State Street's approval of the prohibited transaction.[6]

Specifically, the Complaint alleges that BDO and its Board "facilitated the preparation of materials used to value the Company and the Transaction itself," that they "prepar[ed] and provid[ed] inaccurate and unreasonable financial information to be used for the valuation of the Company," and thus "had knowledge of the fiduciary breaches and the prohibited transactions set forth herein, and knowingly participated in and facilitated those prohibited transactions." Compl. at ¶¶ 122-124. These allegations plausibly state a claim for co-fiduciary liability. *Bowers*, 717 F. Supp. 3d 165, 172, 176 (holding that a board's power "to oversee the preparation of financial records and projections used to value the ESOP's shares . . . succeeds in plausibly alleging that the Board Defendants are liable for [the trustee's] alleged breach of fiduciary duties").

> b.    *The BDO ESOP Trustees are also liable as co-fiduciaries.*

Defendants' dismissal arguments concerning the ESOP Trustees fare no better. MTD at 9-11. *First*, they cite no authority for the proposition that co-fiduciary liability under § 1105(a)(3) requires fiduciary status at the time of the other fiduciary's breach—likely because none exists. Courts have consistently held that § 1105(a)(3) imposes liability on a successor trustee for a predecessor's breach if they had knowledge of the breach and failed to make reasonable efforts under the circumstances to remedy it. *See Silverman v. Mut. Ben. Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998); *Fernandez v. K-M Indus. Holding Co., Inc.*, 585 F. Supp. 2d 1177, 1184 (N.D. Cal. 2008); *Conner v. Mid S. Ins. Agency*, 943 F. Supp. 647, 662 (W.D. La. 1995).

---

[6] 29 U.S.C. § 1105(a) holds fiduciaries responsible for a co-fiduciary's breach of any "fiduciary responsibility," which includes both breaches of fiduciary duties under § 1104 and causing prohibited transactions under § 1106. *See* 29 U.S.C. §§ 1101-1114 (titling the entirety of 29 U.S.C. Ch. 18, Subch. I, Subt. B, Pt. 4 "Fiduciary Responsibility").

*Second*, and contrary to Defendants' position, "group pleadings are not, prima facie, excluded by Rule 8(a)." *Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F.Supp.2d 50, 53 (D. Mass. 2014). Rather, "a complaint generally will only be dismissed where it is 'entirely implausible' or impossible for the grouped defendants to have acted as alleged." *Id.* (citation omitted).

*Third*, the Complaint here contains sufficient factual detail from which to infer that the ESOP Trustees had the requisite knowledge. Each of them was party to the ESOP Transaction (as BDO executives and principals) and thus each of them knew that the ESOP was purchasing property from parties-in-interest (e.g., Board members, officers, and private owners of BDO). *Id.* ¶¶ 51-52. Nothing more is required. Defendants' argument that Plaintiff must plead that each ESOP Trustee had knowledge of the overpayment (i.e., the lack of exemption) "would be especially illogical here, where several of the § 1108 exemptions turn on facts one would expect to be in the fiduciary's possession." *Cunningham*, 145 S. Ct. at 1030; *see also Brookins v. Northeastern Univ.*, 731 F. Supp. 3d 112, 118 (D. Mass. 2024) (holding that plaintiffs are not required to plead "facts which tend systemically to be in the sole possession of defendants") (quoting *Braden*, 588 F.3d at 598). Regardless, even if Plaintiff was required to plead that the ESOP Trustees knew that the ESOP overpaid, he has done so: each of the ESOP Trustees is a high-level executive of BDO who was responsible for preparing internal financial information about BDO that was used by State Street to assess the value of BDO stock purchased. Compl. ¶¶ 27(a-f), 51-52. For example, Defendant Ellenbogen was the Chair of BDO's Governance Committee and was an instrumental figure in the establishment of the ESOP. *Id*. ¶ 27(b). The other ESOP Trustees' held top level executive roles, including BDO's Chief People Officer, past and current Chief Operating Officers, National Managing Principal of Tax, National Managing Principal of Assurance, and National Managing Principal of Corporate Finance and Transaction Advisory

Services. *Id.* ¶ 27(a-f). Given their roles in preparing and providing financial information to State Street, they would have known that State Street received and was relying on inflated revenue figures—including improperly categorized client "credits." *Id.* ¶¶ 51-60.

Whether Plaintiff is required to plead knowledge of the party-in-interest nature of the ESOP Transaction or knowledge of its non-exempt status, the Complaint alleges both. And because the ESOP Trustees failed to remedy the harm caused by the Transaction, Plaintiff plausibly states a claim for co-fiduciary liability against them.

**C.    <u>If the Court Dismisses Any of Plaintiff's Claims, He Should Be Allowed to Amend.</u>**

If the Court dismisses any of Plaintiff's claims, he respectfully requests leave to amend. Rule 15(a) reflects a liberal amendment policy, which "allows leave to amend to be 'freely given' if 'justice so requires.'" *Lackiram v. Montminy*, 2006 WL 3469605, at *1 (D. Mass. Nov. 30, 2006). Plaintiff has not previously amended his complaint. And because Defendants' primary arguments concern the level of specificity of the Complaint's allegations, an amendment would not be futile. *Cf. In re A123 Sys., Inc. Sec. Litig.*, 930 F. Supp. 2d 278, 286-87 (D. Mass. 2013) (granting plaintiff's second request for leave to amend because "Rule 15 counsels permitting a third bite at the apple at this early stage of the litigation") (Stearns, J.).

## V.    <u>CONCLUSION</u>

For the above reasons, Defendants' motion to dismiss should be denied in its entirety.

Dated: May 19, 2025

/s/ Michelle C. Yau
Michelle C. Yau (#657236)
Daniel R. Sutter (*admitted pro hac vice*)
Ryan A. Wheeler (*admitted pro hac vice*)
Caroline E. Bressman (*admitted pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Eighth Floor
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
dsutter@cohenmilstein.com
rwheeler@cohenmilstein.com
cbressman@cohenmilstein.com

*Attorneys for Plaintiff*