UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-10128

TRISTIN TAYLOR,
individually and on behalf of all others similarly situated

v.

BDO USA, P.C., the Board of Directors of BDO USA, P.C., Wayne Berson,
BDO ESOP Trustees, Catherine Moy, Stephen Ferrara, Mark Ellenbogen,
Matthew Becker, William Eisig, and Patrick Donaghue

MEMORANDUM AND ORDER ON MOTION TO DISMISS

August 21, 2025

STEARNS, D.J.

Plaintiff Tristin Taylor is a shareholder in an employee stock ownership plan, the BDO USA Employee Stock Ownership Plan (BDO ESOP or ESOP), sponsored by BDO USA, P.C. (BDO or the Company). BDO provides accounting, tax, and consulting services throughout the United States. In this putative class action brought under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*., (ERISA), on behalf of the ESOP and other ESOP participants, Taylor claims that the ESOP overpaid for BDO's stock in a transaction engineered by defendants BDO; its Board of Directors (the Board); Wayne Berson (BDO's Chief Executive Officer and Chairman of the Board); and BDO ESOP Trustees Catherine Moy, Stephen

Ferrara, Mark Ellenbogen, Matthew Becker, William Eisig, and Patrick Donaghue (collectively, defendants). Taylor claims that defendants breached their fiduciary duties under ERISA in purchasing the bundle of BDO stock as an ESOP asset.

All defendants move to dismiss the Complaint for lack of standing under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Rule 12(b)(6). For the following reasons, the court will allow the motion without prejudice.

## BACKGROUND

The essential facts, as drawn from the Complaint and viewed in the light most favorable to Taylor, are as follows. On August 31, 2023, BDO, a privately held company, created the ESOP ostensibly for the benefit of its employees. Compl. (Dkt. # 1) ¶ 37. The BDO ESOP is an ERISA-protected retirement plan funded entirely with BDO stock shares. There is no financial market in which BDO stock is traded – the share value is rather determined by an annual private valuation of BDO's worth as a going concern. *Id.* ¶¶ 2, 46. Taylor, an employee of BDO since at least 2019, is a participant in the ESOP. *Id.* ¶ 17. He purportedly receives BDO stock as a retirement benefit and is currently 20% vested in the BDO shares held in his account. *Id.*

At its inception, the ESOP purchased some 42% of BDO's outstanding shares of stock from the Company's principals for approximately $1.3 billion (the Transaction). *Id.* ¶¶ 37, 38. The majority share of the stock was retained

2

by the principals.  *Id.* ¶ 39.  To finance the purchase, BDO procured a loan from Apollo Global Management affiliates (Apollo) at an interest rate of 11.36%.[1]  *Id.* ¶¶ 11, 12.  BDO then deposited the proceeds of the loan into the ESOP.  *Id.* ¶¶ 45, 48.

BDO, acting through its Board of Directors, retained State Street Global Advisors Trust Company (State Street) as the independent trustee of the ESOP.  *Id.* ¶ 41.  As the trustee, State Street was responsible for negotiating the purchase of BDO stock on behalf of the ESOP.  *Id.*  State Street was also charged with performing due diligence of BDO's business to ensure that the valuation of BDO stock was based on an accurate market valuation.  *Id.*  State Street, which is not named as a defendant in this lawsuit, engaged Duff & Phelps to assist in valuing the BDO stock.  *Id.* ¶¶ 42, 43.  BDO also engaged Stout Risius Ross (SRR), a valuation advisor, to guide it through the Transaction.  *Id.* ¶ 40.  SRR served as the exclusive financial advisor to BDO with respect to the ESOP.  *Id.*

---

[1] The ESOP's Form 5500 (post-transaction equity valuations published in the plan's annual returns) filed with the United States Department of Labor for the year ending December 31, 2023, disclosed that the ESOP was carrying $1.28 billion in liabilities.  *Id.* ¶ 46.  The interest rate on the loan between Apollo and BDO carried a floating interest rate based on the Secured Overnight Financing Rate plus 6%.  *Id.* ¶ 47.  As of December 31, 2023, the floating rate was 11.36%.  *Id.*

After the ESOP Transaction closed, the Board replaced State Street as the ESOP's trustee with a committee of BDO executives.[2]  *Id.* ¶ 44.  State Street remained in a consulting role to the new ESOP Trustees.  *Id.*

Taylor filed this putative class action on January 17, 2025, alleging that defendants collectively orchestrated the Transaction with the goal of causing the BDO ESOP to overpay for BDO stock by providing false and misleading information about BDO's business affairs.  *Id.* ¶¶ 93-120.  According to Taylor, misleading information, which included inflated earnings, unreasonable projections, and the concealment of a deterioration in the quality of BDO's audit work, caused State Street to adopt an inflated valuation of the fair market value of BDO stock.  *Id.* ¶¶ 51, 54, 67.

As a result of the alleged overpayment, Taylor claims that: (1) BDO and the Board caused the BDO ESOP to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a) (Count I) and (2) in violation of ERISA § 406(b), 29 U.S.C. § 1106(b) (Count II); (3) BDO and the Board breached their fiduciary duties to the BDO ESOP in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B) (Count III); and (4) BDO, the Board, and the BDO ESOP Trustees are liable as co-fiduciaries for

---

[2] The BDO ESOP Trustees consisted of defendants Catherine Moy, Mark Ellenbogen, Matthew Becker, William Eisig, Patrick Donoghue, and Stephen Ferrara.  *Id.* ¶ 27.

the fiduciary breaches under ERISA § 405(a), 29 U.S.C. § 1105(a) (Count IV). Taylor seeks monetary and equitable relief, including a declaration that defendants each breached their fiduciary duties in violation of ERISA, an injunction barring defendants from further violations of their fiduciary responsibilities, the removal of the current ESOP Trustees, and the appointment of a new, independent trustee to manage the BDO ESOP.

## LEGAL STANDARD

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." *Ne. Erectors Ass'n of BETA v. Sec'y of Labor, Occupational Safety & Health Admin.*, 62 F.3d 37, 39 (1st Cir. 1995). Plaintiffs bear the burden of establishing federal subject matter jurisdiction in this case. *See Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993). In determining whether plaintiffs have met their burden, the court "take[s] as true all well-pleaded facts in the plaintiffs' complaint[], scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." *Fothergill v. United States*, 566 F.3d 248, 251 (1st Cir. 2009).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

5

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## DISCUSSION

The parties dispute whether Taylor has adequately pled an injury in fact because of defendants' allegedly unlawful actions. *See* Dkt. # 30 at 25; Dkt. # 39 at 12. Taylor claims that he and the prospective class members have been harmed by the ESOP paying more than fair market value for BDO stock in consummating the Transaction (a purchase price of approximately $1.3 billion for 42% of BDO's stock) and incurring an unreasonably high interest rate of 11.36% on the debt used to finance the Transaction, all of which caused a reduction in the value of their individual ESOP holdings. *See* Compl. ¶¶ 9, 17, 90; Dkt. # 39 at 12.

To establish standing under Article III of the Constitution, a plaintiff must show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An "injury in fact" is "an invasion of a legally protected interest which is . . . concrete and particularized." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (citation omitted). District courts "must . . . consistent with Article III standing, dismiss suits that allege a prohibited transaction but fail to identify an injury." *Cunningham v. Cornell University,* 145 S. Ct. 1020, 1032 (2025); *cf. Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544 (2020) (explaining that "Article III standing requires a concrete injury even in the context of a statutory violation" and affirming the dismissal of an ERISA claim because "plaintiffs . . . failed to plausibly and clearly allege a concrete injury") (internal quotation and citation omitted).

Although the court recognizes that in the context of a privately held stock sale there is "no objective price of the stock to serve as a baseline," *Zavala v. Kruse-W., Inc.*, 398 F. Supp. 3d 731, 745 (E.D. Cal. 2010), the Complaint points to no instance in which a tangible loss of value was actually

incurred by Taylor. The Complaint does not allege that Taylor made any monetary contribution to the ESOP Transaction or that he was saddled with any obligation to repay the loan to Apollo, much less even venturing a guess as to the actual then and now value of Taylor's ESOP account. *See Plutzer v. Bankers Tr. Co. of S.D.*, 2022 WL 17086483, at *2 (2d Cir. Nov. 21, 2022) (dismissing ERISA claims for lack of standing because plaintiff merely alleged an overpayment for company stock, even though plaintiff relied on Form 5500s to support his allegation that the stock's value dropped year-over-year). Without a showing that any harm flowed from the Transaction to Taylor, including any post-Transaction decline in the value of his ESOP account, the court cannot conclude, beyond mere speculation, that Taylor has suffered a constitutionally cognizable injury. *See New England Biolabs, Inc. v. Miller*, 2021 WL 11702966, at *3 (D. Mass. May 26, 2021) (holding that plaintiff lacked standing because he failed to allege that he did not receive benefits owed to him under the ESOP plan).

    Even if overpayment for an ERISA plan asset may constitute a sufficient injury in fact in a case resulting in a measurable financial loss, *see e.g., Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1190 (7th Cir. 2021), the Complaint does not adequately allege any measure that suggests that the ESOP in fact overpaid for the BDO stock, *see MacTaggert v. Pro Fiduciary*

*Servs., LLC,* 2025 WL 1726143, at *4 (W.D. Wis. June 20, 2025); *see also Baur v. Veneman,* 352 F.3d 625, 636-637 (2d Cir. 2003) ("While the standard for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing."). Taylor contends that the Complaint's allegations related to pre-Transaction misconduct, rather than post-Transaction decline in value of BDO stock, sufficiently demonstrate that Taylor and the ESOP suffered an injury in fact. *See* Dkt. # 39 at 13. He claims that the stock was overvalued because: (1) employees were pressured to mischaracterize client "credits" (retainers or prepayments) as revenue, which misled State Street as to the value of BDO stock; (2) the valuation did not account for audit performance issues documented by the Public Company Accounting Oversight Board (PCAOB); (3) the $1.3 billion price that the ESOP paid for the stock did not include sufficient discounts for the ESOP obtaining no control over the BDO or its governance; and (4) the ESOP was forced to enter into unreasonable financing terms, including a loan from Apollo at an "unreasonably high interest rate" of 11.36%. Compl. ¶¶ 46-48, 53-78.

Moreover, the Complaint does not plausibly allege that State Street did not consider any of these facts in evaluating the ESOP Transaction, much

9

less that BDO or its Board failed to adequately disclose them to State Street. Nor is there any allegation that State Street's performance with respect to the Transaction was deficient – there is no factual suggestion in the Complaint that State Street lacked qualifications or failed to perform due diligence in responsibly evaluating the terms of the Transaction. *See MacTaggert*, 2025 WL 1726143, at *4 (finding no injury-in-fact where plaintiffs provided a generic list of valuation errors and failed to include allegations regarding the Trustee's qualifications, the valuation process, or the negotiation of a stock purchase). Nor does the Complaint contain any plausible inferences, only mere conjecture, that the actual defendants named in this case, BDO, the Board, and the ESOP Trustees, personally contributed to State Street's alleged overvaluation of BDO's stock. While Taylor points to an "unreasonably high" interest rate of 11.36% as support for the allegation that the ESOP entered into unreasonable financing terms, this is mere speculation – there are no factual allegations that outside purchasers or financing had been sought but were unavailable at terms preferable to those negotiated by State Street.[3]

---

[3] Taylor relies on *Laidig v. GreatBanc Tr. Co.*, 2023 WL 1319624, at *6 (N.D. Ill. Jan. 31, 2023), to support his argument that he has suffered a cognizable injury and loss of value. However, in *Laidig*, plaintiffs plausibly alleged injury in fact due to their ESOP's overpayment for stock by pointing to the valuation immediately following the transaction and alleging facts that

## ORDER

For the foregoing reasons, BDO's motion to dismiss the Complaint is ALLOWED without prejudice.

        SO ORDERED.

        /s/ Richard G. Stearns
        UNITED STATES DISTRICT JUDGE

---

the company had failed to sell at similar prices for the decade leading up to the disputed ESOP transaction. In addition, the *Laidig* plaintiffs alleged that defendants' valuation failed to account for the prospect of declining profitability after the initial boom caused by the onset of the COVID-19 pandemic. *See Laidig*, 2023 WL 1319624, at *6.